UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| MUSTAPHA BOJANG, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) C.A. No. 22-182 WES |
| | ) |
| STATE OF RHODE ISLAND, | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM AND ORDER

WILLIAM E. SMITH, United States District Judge.

Before the Court is Petitioner Mustapha Bojang's Amended Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, ECF No. 14 ("Am. Pet."). The State of Rhode Island ("State") has filed an Answer in Opposition to the Amended Petition, ECF No. 15 ("Ans."). The Court has determined that no hearing is necessary. For the reasons that follow, the Amended Petition is DENIED and DISMISSED.

I.  Background and Travel

A. Procedural History

On May 13, 2010, a jury in Rhode Island Superior Court convicted petitioner Mustapha Bojang of two counts of first-degree child molestation. Am. Pet. 3. He was sentenced to thirty years of incarceration, twenty years to serve. Id.

Bojang appealed his conviction to the Rhode Island Supreme Court. See State v. Bojang, 83 A.3d 526 (R.I. 2014) ("Bojang I").

He contended that the trial justice made three errors: (1) denying his motion to suppress statements he made to police post-arrest, (2) refusing to exclude a prior false accusation of physical abuse the complainant made against her mother, and (3) denying his motion for a new trial. Id. at 529. The Rhode Island Supreme Court affirmed the trial justice's decision on the second and third issues but remanded the case to the Superior Court to review whether any post-arrest confessions Bojang made to police should have been suppressed, limiting the scope of the remand to the voluntariness of the confessions. Id. at 529, 540. Specifically, the court empowered the trial justice "to make additional findings of fact and credibility determinations," with the option to gather additional evidence or to decide the issue based on the existing record. Id. at 540.

On remand, both parties waived the opportunity to present additional evidence. State v. Bojang, 138 A.3d 171, 173 (R.I. 2016) ("Bojang II"). The trial justice made oral findings of fact and credibility determinations from the bench by reviewing the testimony from the hearing on Bojang's motion to suppress and from the jury trial. Id. Ultimately, the trial justice entered an order denying Bojang's motion to suppress, concluding that the confession was "voluntary and not the result of assault, threats, or coercion." Id. at 177-78.

On appeal, the Rhode Island Supreme Court concluded that the trial justice's findings of fact and credibility determinations were not clearly erroneous. Id. at 178. After reviewing the totality of the circumstances surrounding the challenged confession, the court concluded that Bojang's confession was voluntary and not the result of improper conduct by the interrogating detectives. Id. at 181. The court affirmed the trial justice's decision to deny the motion to suppress, thus affirming Bojang's conviction. Id.

Bojang then filed an application for Post-Conviction Relief ("PCR") asserting two grounds for relief. See Bojang v. State, No. PM-2016-2458, 2021 R.I. Super. LEXIS 44 (R.I. Sup. Ct. May 13, 2021) ("Bojang III"). First, he argued that the trial justice committed reversible error because of inconsistent findings and determinations about the credibility of testimony related to the confessions. Id. at *5. Second, he contended that he received ineffective assistance from counsel in the remand hearing, specifically because of counsel's decision not to present additional testimony or argument. Id. The Superior Court rejected both arguments, holding that prior findings about his credibility were not inconsistent and that trial counsel was not ineffective but rather was strategic in not presenting new evidence at the remand hearing. Id. at *17, 24. The Rhode Island Supreme Court

3

declined to hear an appeal. Pet. Den. Cert. Apr. 15, 2022, ECF No. 1-1.

On April 27, 2022, Bojang filed petitioned for habeas relief in this Court pursuant to 28 U.S.C. § 2254. See Habeas Pet., ECF No. 1. The State filed a motion to dismiss. Def.'s Mot. Dismiss, ECF No. 8. Bojang then filed a motion to appoint counsel which the Court granted, see ECF No. 9; Text Order Aug. 17, 2022, and subsequently requested the opportunity to supplement his petition with the assistance of his appointed counsel, see ECF No. 11. The Court granted this request and denied the motion to dismiss, see Text Order Mar. 13, 2023, and Bojang submitted an amended petition and supplemental memorandum on May 1, 2023, see ECF No. 13. The State then filed an answer opposing Bojang's amended petition, see ECF No. 15.

B. Facts

Bojang's present petition centers on two interrogations conducted by two Woonsocket Police Department officers on February 2, 2009, shortly after his arrest. The first interrogation, he alleges, occurred in a juvenile conference room at the police station without recording capabilities, and Bojang asserts that in this interrogation he denied the accusations against him. Am. Pet. 1. He also alleges that during this interrogation, Detective LaBreche, one of the interrogating officers, threatened and physically assaulted him. Id.

4

The second interrogation was recorded and contained Bojang's confession. See id. It was admitted at trial over Bojang's objection and after a two-day suppression hearing. Id. At the hearing, Detective Hammann, one of the interrogating officers, testified that he could not recall, among other things, whether Detective LaBrechehad been armed during the unrecorded interrogation, whether Detective LaBreche had cursed at Bojang, whether Detective LaBreche banged on the table, and whether Detective LaBreche struck Bojang in the head and threatened to have federal immigration authorities put him in federal prison. Id. at 1-2.

Bojang's petition also focuses on his own testimony at trial. He testified that during the interrogation, he repeatedly denied the allegations against him, and that Detective LaBreche struck him on the head multiple times, yelled at him, and threatened him with deportation, stating that he was "fucking going to get deported and . . . fucking going to get killed." Id. at 8. Bojang testified that, after repeatedly denying the allegations, the detectives informed him that he had two minutes to cooperate and, fearing that he would be deported or killed as previously threatened, he admitted to some of the allegations. Id. at 8. He stated that immediately upon doing so, the detectives' demeanors changed, and they stopped hitting and threatening him. Id. at 8-9.

5

Detective Hammann testified again at trial and, rather than claiming not to recall as he did in the suppression hearing, he testified that Detective LaBreche "might" have elevated his voice and "might" have banged on the table, admitted to telling Bojang that he would be moved to a federal holding cell by immigration authorities, and acknowledged that Bojang denied the accusations multiple times before relenting. Id. at 9.

## II. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified as amended at 28 U.S.C. § 2254, federal courts are authorized to grant writs of habeas corpus for state prisoners held in violation of federal law or the United States Constitution. Ferrell v. Wall, 935 F.Supp.2d 422, 425 (D.R.I. 2013). AEDPA restricts federal courts' review of state court convictions and sentences to prevent federal courts from becoming "vehicles for relitigating state trials." Sanna v. DiPaolo, 265 F.3d 1, 15 (1st Cir. 2001). The purpose of habeas corpus relief is to protect against extreme malfunctions in a state's criminal justice system, "not [to be] a substitute for ordinary error correction through appeal." Harrington v. Richter, 562 U.S. 86, 102 (2011).

To succeed on a habeas petition, a petitioner must show that their claim "was adjudicated on the merits" and was (1) "contrary to, or involved an unreasonable application of, clearly

6

established Federal law;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C § 2254(d). With respect to the former path of application, the Supreme Court has prescribed benchmarks to establish what reasonableness means under habeas review. See Porter v. Coyne-Fague, 35 F.4th 68, 75 (1st Cir. 2022). First, an "unreasonable application" is one that is "objectively unreasonable, not merely wrong; even clear error will not suffice." Id. (quoting White v. Woodall, 572 U.S. 415, 419 (2014). Next, the "unreasonable application" applies when it is so clear that the state court's ruling was so unjustified that there could be no "possibility for fairminded disagreement." Harrington, 562 U.S. at 787. With respect to the latter, the unreasonableness standard may be satisfied where the state court decision is "devoid of record support for its conclusion or is arbitrary." McCambridge v. Hall, 303 F.3d 24, 37 (1st Cir. 2002) (citing O'Brien v. Dubois, 145 F.3d 16, 25 (1st Cir. 1998)).

III. Discussion

In his Amended Petition, Bojang raises a single argument: that the introduction at trial of his confession, which he contends was involuntary, was based on an unreasonable determination of the facts in light of the evidence presented. Am. Pet. 11-13.

As an initial matter, there can be no doubt that threats and physical violence by a police officer in a custodial interrogation

would violate the Fifth Amendment to the United States Constitution, which states that no person accused of a crime "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.  This protection bars the introduction into evidence in a criminal prosecution of a defendant's custodial statements to the police which were not freely and voluntarily made.  Miranda v. Arizona, 384 U.S. 436 (1966).  The Supreme Court has directly held that "a confession produced by violence or threats of violence is involuntary and cannot constitutionally be used against the person giving it."  Sims v. Georgia, 389 U.S. 404, 407 (1967).  Many courts have held that physical violence will render a statement per se involuntary.  See United States v. Farley, 607 F.3d 1294, 1328 (11th Cir. 2010); United States v. Haswood, 350 F.3d 1024, 1027 (9th Cir. 2003); Miller v. Fenton, 796 F.2d 598, 604 (3d Cir. 1986).  Other courts, however, have invoked a totality of the circumstances test to determine whether or not attenuation between the police violence and the accused statement permits admission of the confession.  See Holland v. McGinnis, 963 F.2d 1044, 1050 (7th Cir. 1992); Cooper v. Scroggy, 845 F.2d 1385, 1390 (6th Cir. 1988).

Here, he Rhode Island Supreme Court concluded that Bojang's confession "was voluntary and was not the product of coercion or impermissible conduct on the part of the interrogating detectives," thus holing that the admission of the confession did

8

not violate the Fifth Amendment.  Bojang II, 138 A.3d at 178-81.  Bojang asserts that this decision is based on an unreasonable determination of the facts because the state court erred in finding the testimony of the police detective credible and Bojang's own testimony incredible.  Am. Pet. 13-16.

"Credibility is quintessentially a matter of fact, reserved in almost every circumstance for the trier."  Sanna v. Dipaolo, 265 F.3d 1, 10 (1st Cir. 2001).  Mere disagreement with the credibility determinations of the state court is not sufficient to sustain a habeas claim.  "Without more, the law requires [a federal court] to presume that [a] factual finding is correct and to defer to it."  Id.  "The 'presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact.'"  Norton v. Spencer, 351 F.3d 1, 6 (1st Cir. 2003) (quoting Sumner v. Mata, 455 U.S. 591, 593 (1982)), cert. denied, 542 U.S. 933 (2004).

To support his argument that the trial court erred in its credibility determination of Detective Hammann, Bojang points to the discrepancy between the trial court's commentary on Detective Hammann's testimony at the suppression hearing, which the court characterized as evasive and found troubling, and the court's determination on remand that that same testimony was not problematic.  Am. Pet. 16.  The Rhode Island Supreme Court noted this discrepancy as well, but still concluded that the trial

9

justice's conclusions on remand were not clearly erroneous, reasoning that, on remand, the trial justice

> supplied the insight that cannot be derived from reading a cold transcript . . . . observ[ing] a difference between how this witness responded to questions on direct and redirect examination and how he responded on cross- and recross-examination. The trial justice characterized the cross-examination as "above vigorous" and "exceptional," noting that "the detective began to fence with the cross-examiner" and "resist[ed] answering yes or no to certain questions." He ultimately concluded that this resistance did not "undermine [Det.] Hammann's credibility regarding denials as to specific assaults and threats." This conclusion, together with his finding that "defendant's testimony was not credible in this regard," are just the sort of evidentiary determinations for which we afford a trial justice abundant discretion. We rely on a trial justice's assessment of the credibility of the witnesses because, as we have often acknowledged, a trial justice is in the best position to assess the credibility of the witnesses.

Bojang II, 138 A.3d at 180. This conclusion is not based on an unreasonable determination of the facts in light of the available evidence. The trial justice explained, and the Rhode Island Supreme Court agreed, that Detective Hammann's testimony was ultimately credible, citing adequate reasons for the discrepancies in his testimony. "In this instance, the state trial court spoke clearly, and the [Rhode Island Supreme Court] resoundingly endorsed its credibility assessment. Under these circumstances, it would be wholly inappropriate for a federal court to repastinate soil already thoroughly plowed and delve into the veracity of the

10

witness on habeas review." Sanna, 265 F.3d at 10 (citations omitted).

Finally, Bojang takes issue with the trial justice's determination regarding his own testimony, asserting that the trial justice initially deemed Bojang "credible" and ultimately reversed course without any additional evidence or testimony for support. Am. Pet. 16. Although the trial justice stated during the motion for new trial that Bojang generally "presented himself credibly," the Superior Court addressed this issue in its decision denying his application for post-conviction relief, explaining that "the word 'credibly' could have probably used a qualifier" to "distinguish between what parts of [Bojang's] testimony were credible and which were not." Bojang III, *8-9, *14-15. The court further explained that the credibility determination was justified in light of "the contrast in [Bojang's] demeanor from the video confession and that exhibited by the Petitioner at trial." Id. at *14-15. This determination, too, is not based on an unreasonable application of the facts and has sufficient support; the decision is not "so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes," such that it would be appropriate to grant habeas relief on this basis. McCambridge, 303 F.3d at 37.

11

IV.  CONCLUSION

Based on the foregoing, the Court DENIES and DISMISSES Bojang's Amended Petition, ECF No. 14.

### RULING ON CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court hereby finds that this case is <u>not</u> appropriate for the issuance of a certificate of appealability (COA) because Bojang failed to make a substantial showing of the denial of a constitutional right as to any claim, as required by 28 U.S.C. § 2253(c)(2).  Bojang is advised that any motion to reconsider this ruling will not extend the time to file a notice of appeal in this matter.  <u>See</u> Rule 11(a), Rules Governing Section 2254 Cases.

IT IS SO ORDERED.

/s/ W. E. Smith
William E. Smith
District Judge
Date:  August 4, 2023